Filed 2/22/24  P. v. Meyer CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CLIFFORD MEYER,<br><br>        Defendant and Appellant. | H051078<br>(Monterey County<br> Super. Ct. No. 22CR009188) |

## I.  INTRODUCTION

Defendant Clifford Meyer was convicted by jury of elder abuse (Pen. Code, § 368, subd. (b)(1))**[1]** and false imprisonment of an elder (*id.*, subd. (f)).  The jury also found true as to each count that defendant personally inflicted great bodily injury on the victim within the meaning of section 12022.7, subdivision (c).  The trial court sentenced defendant to prison for seven years.

On appeal, defendant's appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) that states the case and facts but raises no issue. We notified defendant of his right to submit written argument on his own behalf within 30 days.  That period has elapsed, and we have received no response from defendant.

---

**[1]** All further statutory references are to the Penal Code unless otherwise indicated.

Following the California Supreme Court's direction in *People v. Kelly* (2006) 40 Cal.4th 106 (*Kelly*) at page 110, we provide a brief description of the facts and the procedural history of the case.

## II. BACKGROUND

### A. *The Offenses*

Defendant was formerly the victim's foster son. When defendant was an adult, the victim allowed defendant to come back and live with her for a period of time. Defendant was taller, heavier, and stronger than the victim.

On the date of the incident in May 2022, the victim was 80 years old. The police were dispatched to the victim's residence after defendant called for medical assistance. Defendant was present at the residence's front gate when law enforcement responded. He opened the gate for the police and allowed them into the residence. The police saw the victim lying on the floor inside the residence. She had duct tape over her mouth and around her neck and wrists. Her head was bleeding "profusely," and she appeared to be unconscious. One hand appeared to be swollen. A police officer tried calling to her and moving her a little bit, and after a minute or two, she began to make noises. Medical personnel initially treated the victim at the scene.

The victim appeared to the police to be confused, shaken, and scared as a result of the incident. She indicated to the police that defendant had attacked her but that she did not know why. The victim reported that she pretended that she had passed out in order to get defendant to stop. She told the police that she did not want defendant to remain at the house. The evidence at the scene was consistent with defendant tying up the victim. The police did not find a knife in the house. A video of the victim's statements at the scene from an officer's body-worn camera was admitted into evidence.

Defendant was cooperative with the police. The police asked him whether the victim suffered from dementia or Alzheimer's. Defendant did not report having suffered

2

any injury. The police saw two tiny scratches or abrasions on his left wrist but did not know how defendant received the injuries.

The victim went to the emergency room for treatment. She had a laceration on the left side of her head, and a CT scan revealed "swelling to the soft tissue." Six staples were used to close the wound. She also had a small laceration on the right side of her head and bruising around one hand.

At trial, in March 2023, the victim acknowledged that she had memory problems. She testified that just prior to the incident, defendant was talking to her as he walked through the kitchen of her residence. He told her that he had called the police for her, but she did not understand what he meant. She testified that defendant at some point used a "razor-sharp" pocketknife to cause a wound on both sides of her head. At trial, the victim did not remember being tied up with duct tape during the incident. The victim was "shocked" when defendant attacked her. She testified that she did not know what led up to the attack and that he had never previously hurt her. Even as a foster child, he had never been mean to her nor had he ever been rough with her. However, after the attack, she told the police that defendant had pushed her a couple of weeks prior, but that he had helped her get up.

### B. *The Charges and Trial*

Defendant was charged by information with elder abuse (§ 368, subd. (b)(1); count 1) and false imprisonment of an elder (*id.*, subd. (f); count 2). The information also alleged as to each count that defendant personally inflicted great bodily injury on the victim, who was 70 years of age or older (§ 12022.7, subd. (c)).

On February 27, 2023, prior to jury selection, defendant's appointed counsel declared a doubt as to defendant's mental competence pursuant to section 1368 based upon defendant's apparent unwillingness to engage in communications with counsel. After the trial court asked defendant several questions, the court cleared the courtroom to allow defendant and counsel to speak to each other. When the court went back on the

3

record, counsel indicated that he had had an opportunity for further examination and evaluation of defendant, that counsel was withdrawing his request under section 1368, and that they were proceeding with trial.

During motions in limine, the prosecutor sought to admit, and defendant sought to exclude, statements by the victim to the police. Defendant contended that the statements were inadmissible hearsay while the prosecutor argued that they qualified as spontaneous statements under Evidence Code section 1240. The trial court conducted an Evidence Code section 402 hearing at which the police officer (now a detective), to whom the victim made the statements, testified. The court also watched the officer's body-worn camera video of the victim's statements. The court found that the statements were "spontaneous" and "excited utterances." The court ruled that if the prosecutor established the foundation under Evidence Code section 1240 during trial, the court would admit the statements. The court later explained that the statements were not made inadmissible by Evidence Code section 352.

On March 2, 2023, the jury found defendant guilty on both counts and found true the great bodily injury enhancement as to each count.

### C. *Sentencing*

On April 13, 2023, the trial court sentenced defendant to prison for seven years. In imposing the sentence, the court denied defendant's request to dismiss the great bodily injury enhancement pursuant to section 1385. The court ordered defendant to pay various fines and assessments and made a general order of restitution. An amended minute order regarding the sentencing hearing and an amended abstract of judgment reflect that defendant received presentence custody credits of 317 actual days plus 316 days of conduct credit.

### D. *Appeal*

On May 22, 2023, defendant filed a timely notice of appeal. We appointed counsel to represent defendant in this court.

### III.  DISCUSSION

Pursuant to *Wende*, *supra*, 25 Cal.3d 436, and *Kelly*, *supra*, 40 Cal.4th 106, we have reviewed the entire record.  We requested supplemental briefing from the parties regarding presentence custody credits.  In response to our request, the parties agree that the record reflects that defendant should have received (1) an additional 14 actual days, for a total of 331 actual days, (2) plus 49 days of conduct credit pursuant to section 2933.1, (3) for a total of 380 days of presentence custody credits.  We will modify the judgment accordingly.

Having carefully reviewed the entire record, and having ordered modification of the judgment based on the agreement of the parties, we conclude that there is no arguable issue on appeal.  (*Wende*, *supra*, 25 Cal.3d at pp. 441-443.)

### IV.  DISPOSITION

The judgment is ordered modified to reflect that defendant is granted 380 days of presentence custody credits, consisting of 331 actual days plus 49 days of conduct credit under Penal Code section 2933.1.  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to send a copy to the Department of Corrections and Rehabilitation.

_____

BAMATTRE-MANOUKIAN, ACTING P. J.



WE CONCUR:




_____

DANNER, J.




_____

BROMBERG, J.




*People v. Meyer*
**H051078**